E-FILED
Saturday, 17 March, 2018  04:40:22 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| Dylan Donaldson, | |
| *On behalf of himself and others similarly situated*, | Case No. |
| Plaintiff, | Judge |
| v. | Magistrate Judge |
| MBR Central Ill Pizza LLC; M.B.R. Management Corporation; Doe Corporation 1-10; and Mark Ratterman; | Jury Demand Endorsed Hereon |
| Defendants. | |

CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff, DYLAN DONALDSON, for his Complaint against MBR CENTRAL ILLINOIS PIZZA, M.B.R. MANAGEMENT CORPORATION, DOE CORPORATIONS 1-10, and MARK RATTERMAN, allege and state as follows:

**Introduction**

1.    Dylan Donaldson, on behalf of himself and similarly-situated individuals, brings this action against Defendants MBR Central Ill Pizza LLC, M.B.R. Management Corporation, Doe Corporations 1-10, and Mark Ratterman. Plaintiff seeks appropriate monetary, declaratory, and equitable relief for Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.* ("IWPCA").

2.      MBR Central Ill Pizza LLC, M.B.R. Management Corporation, and, upon information and belief, a number of other entities (collectively, "MBR") comprise a Domino's franchisee that owns and operates 83 Domino's stores (the "MBR Domino's stores").

3.      Plaintiff worked for MBR as a delivery driver from approximately April 2017 until December 28, 2017.

4.      Plaintiff trained at the MBR Domino's store located at 409 North Grand Ave. East, Springfield, IL 62702.

5.      Shortly after his employment began, he was transferred to the MBR Domino's store located at 2662 South Fifth Street, Springfield, IL 62703.

6.      All MBR Domino's delivery drivers at the MBR Domino's stores who drive their personal cars to complete deliveries, including Plaintiff, have been subject to the same or similar employment policies and practices, including policies and practices with respect to wages and reimbursement for out-of-pocket expenses.

7.      One or more MBR Domino's stores do not reimburse delivery drivers for their actual expenses.

8.      In fact, no MBR Domino's stores reimburse delivery drivers for their actual expenses.

9.      One or more MBR Domino's stores do not reimburse delivery drivers at the IRS standard mileage rate.

10.     In fact, no MBR Domino's stores reimburse delivery drivers at the IRS standard mileage rate.

11.     One or more MBR Domino's stores do not reimburse delivery drivers at a reasonable approximation of the drivers' expenses.

12.     In fact, no MBR Domino's stores reimburse delivery drivers at a reasonable approximation of the drivers' expenses.

13.     Defendants repeatedly and willfully violated the Fair Labor Standards Act, the IMWL, and the IWPCA, by failing to adequately reimburse delivery drivers for their delivery-related expenses, and thereby failing to pay delivery drivers the legally mandated minimum wage for all hours worked.

14.     Defendants maintain a policy and practice of underpaying their delivery drivers in violation of the FLSA, the IMWL, and the IWPCA.

15.     All delivery drivers at MBR, including Plaintiff, have been subject to the same employment policies and practices, including policies and practices with respect to reimbursement for out-of-pocket expenses.

16.     Plaintiff brings this action on behalf of himself and similarly situated current and former MBR Domino's delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

17.     Plaintiff also brings this action on behalf of himself and similarly situated current and former MBR Domino's delivery drivers in Illinois, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of the IMWL and the IWPCA.

## JURISDICTION AND VENUE

18.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

3

19.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Illinois law claims.

20.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## PARTIES

**Plaintiff**

**Dylan Donaldson**

21.     Plaintiff Dylan Donaldson resides in Springfield, Illinois.

22.     Plaintiff worked within the boundaries of Central District of Illinois.

23.     Plaintiff was an "employee" of all of the Defendants as defined in the FLSA, the IMWL and the IWPCA.

24.     Plaintiff has given written consent to join this action.

**Defendants**

25.     "MBR" includes MBR Central Ill Pizza LLC and M.B.R. Management Corporation, and various other entities that own and operate approximately 80 Domino's Pizza stores in Missouri and Illinois.

26.     MBR owns and operates approximately 80 Domino's stores.

27.     Mark Ratterman is the founder, owner, and president of MBR.

28.     MBR is operated out of 201 North Main Street, Suite 300, St. Charles, MO 63301.

29.     All of the MBR entities are headquartered at 201 North Main Street, Suite 300, St. Charles, MO 63301.

30.     MBR forms a single employer or single integrated enterprise as they share functional interrelation of operations, common management, centralized control of labor relations, and common ownership.

31.     MBR constitutes joint employers as they co-determine matters governing essential terms and conditions of employment, share ability to hire, fire and discipline employees, share ability to affect compensation and benefits, and share authority to direct and supervise employees' performance.

32.     During all relevant times, MBR has permitted employees to transfer or be shared by and between the MBR Domino's stores without retraining.

33.     MBR has suffered or permitted Plaintiff and other delivery drivers to work.

34.     MBR has control or custody of the employment of Plaintiff and similarly situated employees, and the place where Plaintiff and similarly situated employees worked.

35.     MBR had control over Plaintiff's and similarly situated delivery drivers' working conditions.

36.     MBR's website provides a list of all of the Domino's stores they own and operate. See http://www.mbrmgt.com/MBR_Home/MBRStoreList.pdf.

**MBR Central Ill Pizza LLC**

37.     Defendant MBR Central Ill Pizza LLC is a Missouri limited liability company registered to do business in Illinois.

38.     The president and founder of MBR Central Ill Pizza LLC is Mark Ratterman.

39.     MBR Central Ill Pizza LLC is headquartered at 201 North Main Street, Suite 300, St. Charles, MO 63301.

40.     MBR Central Ill Pizza LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

41.     MBR Central Ill Pizza LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

42.     At all relevant times, MBR Central Ill Pizza LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

43.     MBR Central Ill Pizza LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA, the IMWL, and the IWPCA.

44.     At all relevant times, MBR Central Ill Pizza LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

45.     MBR Central Ill Pizza LLC's gross revenue exceeds $500,000 per year.

**MBR Management Corporation**

46.     Defendant MBR Management Corporation is Missouri Corporation registered to do business in Illinois.

47.     The manager and founder of MBR Management Corporation is Mark Ratterman.

48.     MBR Management Corporation is headquartered at 201 North Main Street, Suite 300, St. Charles, MO 63301.

49.     MBR Management Corporation has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

50.     MBR Management Corporation has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

51.     At all relevant times, MBR Management Corporation maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

52.     MBR Management Corporation is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA, the IMWL, and the IWPCA.

53.     At all relevant times, MBR Management Corporation has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

54.     MBR Management Corporation's gross revenue exceeds $500,000 per year.

**Doe Corporations 1-10**

55.     Upon information and belief, Defendants own and operate other corporate entities and/or limited liability companies that also qualify as Plaintiffs' "employers" under the FLSA.

7

56.     These other corporate entities are part of a single enterprise, along with MBR Central Ill Pizza LLC and MBR Management Corporation, that operates the approximately 80 MBR Domino's Pizza stores in Missouri and Illinois.

57.     The other entities may include, but are not limited to, MBR Il, L.L.C.; MBR Peoria Properties, LLC; MBR GG, LLC; MBR Galesburg, LLC; MBR Bloomington/Normal Property, LLC; MBR Chippewa, LLC; MBR Springfield, LLC; 201 North Main LLC; and MBR Central ILL Properties, LLC.

**Mark Ratterman**

58.     Defendant Mark Ratterman is the president of MBR.

59.     Mark Ratterman is the owner of MBR.

60.     Mark Ratterman is individually liable to delivery drivers at the MBR Domino's stores under the definitions of "employer" set forth in the FLSA, the IMWL, and the IWPCA because he owns and operates the MBR Defendant entities, serves as a member of the MBR Defendant entities, ultimately controls significant aspects of the MBR Defendant entities' day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

61.     At all relevant times, by virtue of his role as president of the MBR, Mark Ratterman has had financial control over the operations at each of the named corporate defendants.

62.     At all relevant times, by virtue of his role as president of the MBR, Mark Ratterman has a role in significant aspects of the MBR Defendants' day to day operations.

8

63.     At all relevant times, by virtue of his role as president of MBR, Mark Ratterman has had control over the MBR Defendants' pay policies.

64.     At all relevant times, by virtue of his role as president of MBR, Mark Ratterman has had power over personnel and payroll decisions at the MBR Domino's stores, including but not limited to influence of delivery driver pay.

65.     At all relevant times, by virtue of his role as president of MBR, Mark Ratterman has had the power to hire, fire and discipline employees, including Plaintiff and other delivery drivers at the MBR Domino's stores.

66.     At all relevant times, by virtue of his role as president of MBR, Mark Ratterman has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

67.     At all times relevant, by virtue of his role as president of MBR, Mark Ratterman has had the power to transfer the assets and liabilities of the MBR Defendants.

68.     At all relevant times, by virtue of his role as president of MBR, Mark Ratterman has had the power to declare bankruptcy on behalf of each of the MBR Defendants.

69.     At all relevant times, by virtue of his role as president of MBR, Mark Ratterman has had the power to enter into contracts on behalf of each of the MBR Defendants.

70.     At all relevant times, by virtue of his role as president of MBR, Mark Ratterman has had the power to close, shut down, and/or sell each of the MBR Defendants.

71.     At all relevant times, by virtue of his role as president of MBR, Mark Ratterman had authority over the overall direction of each of MBR Defendants and was ultimately responsible for their operations.

72.     The MBR Defendants function for Mark Ratterman's profit.

73.     Mark Ratterman has influence over how the MBR Domino's stores can run more profitably and efficiently.

## FACTS

### CLASSWIDE FACTUAL ALLEGATIONS

74.     During all relevant times, MBR operated approximately 80 Domino's Pizza restaurants in Illinois and Missouri.

75.     The primary function of the MBR Domino's stores is to sell pizza and other food items to customers, whether they carry out or have their food delivered.

76.     Each of the MBR Domino's stores employs delivery drivers who are primarily responsible for delivering pizzas and other food items to customers' homes and workplaces.

77.     Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers employed by the MBR Defendants.

78.     All delivery drivers employed at the MBR Domino's stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers.

79.     When there are no deliveries to make, the MBR delivery drivers are required to work inside the MBR Domino's stores building pizza boxes, cleaning, preparing pizza and other food items, taking orders, and completing other duties inside the restaurant as necessary.

80.     Throughout his employment, Plaintiff and similarly situated delivery drivers have been paid minimum wage minus a tip credit for the hours they spend making deliveries for the MBR Defendants. Plaintiff was paid $4.95 per hour for his delivery hours.

81.  The MBR Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering the MBR Defendants' pizza and other food items.

82.  The MBR Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone costs, and other equipment necessary for delivery drivers to complete their job duties.

83.  Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, and incur cell phone and data charges all for the primary benefit of the MBR Defendants.

84.  At all relevant times, Plaintiff and other similarly situated delivery drivers at the MBR restaurants were reimbursed a flat per delivery amount.

85.  Plaintiff was reimbursed $1.05 per delivery by the MBR Defendants.

86.  Plaintiff and similarly situated delivery drivers typically average approximately five miles per round-trip delivery.

87.  According to the Internal Revenue Service, the standard business mileage rate for the use of a car during the relevant time periods have been:

    a.  2015: 57.5 cents/mile
    b.  2016: 54 cents/mile
    c.  2017: 53.5 cents/mile
    d.  2018: 54.5 cents/mile

88.  The MBR Domino's stores have not reimbursed their delivery drivers at the IRS standard business mileage rate for the miles they drove completing deliveries.

89.    The MBR Domino's stores have not reimbursed their delivery drivers for their actual expenses.

90.    The MBR Domino's stores have not tracked their delivery drivers' actual expenses.

91.    The MBR Domino's stores have not maintained records of their delivery drivers' actual expenses.

92.    Domino's delivery drivers experience lower gas mileage, more rapid vehicle depreciation, higher insurance rates, and greater vehicle expenses than the average business driver because they typically drive in "start and stop" traffic, on a tight schedule, at night, in inclement weather, and having to turn their car on and off regularly.

93.    As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wage and overtime wages guaranteed to them by the FLSA and Illinois law.

94.    At all relevant times, Defendants apply the same pay policies, practices, and procedures to all delivery drivers at the MBR Domino's stores.

95.    All of the MBR delivery drivers had similar experiences to those of Plaintiff. They were paid tipped minimum wage for their hours worked completing deliveries, were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; and completed deliveries of similar distances and at similar frequencies.

96.    Regardless of the precise amount of the per-delivery reimbursement at any given point in time, the MBR Defendants' reimbursement formula has resulted in an unreasonable

underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the federal minimum wage.

97.     Because MBR paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to the MBR Defendants an amount sufficient to cause minimum wage violations.

98.     While the amount of the MBR Defendants' actual reimbursements per delivery may vary somewhat over time, the MBR Defendants are relying on the same flawed policy and methodology with respect to all delivery drivers at all of their other Domino's stores. Thus, although reimbursement amounts may differ somewhat by time or region, the amounts of under-reimbursements relative to automobile costs incurred are relatively consistent between time and region.

99.     MBR Management Corporation has already been sued by its delivery drivers for under-reimbursement of delivery-related expenses. *See Nyazee v. MBR Management Corporation*, No. 4:14-cv-1561-AGF, Dkt.  1 (E.D. Mo.  September 14, 2014) (alleging that MBR under-reimbursed their delivery drivers by paying them on a per-delivery basis that was inadequate to cover their delivery-related expenses).

100.    In *Nyazee v. MBR Management Corporation*, MBR Management Corporation did not challenge conditional certification of the case as an FLSA collective action, but instead stipulated to the sending of notice to similarly-situated employees. *See* No. 4:14-cv-1561-AGF, Dkt. 45 & 46 (Apr. 7 & 8, 2015).

101.    In *Nyazee v. MBR Management Corporation*, 140 delivery drivers opted in to the case. *See* No. 4:14-cv-1561-AGF, Dkt. 93, Page ID 626 (October 24, 2015).

102.    In *Nyazee v. MBR Management Corporation*, MBR Management Corporation agreed to settle the lawsuit by paying $225,000 to the 140 delivery drivers who opted in to the case. *See* No. 4:14-cv-1561-AGF, Dkt. 99 (Nov. 23, 2015).

103.    In the 3.5 years since *Nyazee v. MBR Management Corporation* was filed, MBR has not changed its policies or practices with respect to reimbursement of delivery-related expenses.

104.    Upon information and belief, one or more of the MBR Domino's delivery drivers Plaintiff seeks to represent have signed arbitration agreements with class action waivers.

105.    The MBR Defendants have willfully failed to pay federal and Illinois state minimum wage and overtime to Plaintiff and similarly situated delivery drivers at the MBR restaurants.

## PLAINTIFF'S INDIVIDUAL FACTUAL ALLEGATIONS

106.    Consistent with their policies, patterns, and practices as described herein, Defendants harmed Plaintiff, individually, as follows:

107.    Plaintiff worked as a delivery driver for the MBR Domino's store located on South Fifth Street in Springfield, Illinois from approximately April 2017 to December 28, 2017.

108.    Plaintiff trained at the MBR Domino's store located at 409 North Grand Ave. East, Springfield, IL 62702.

109.    Shortly after his employment began, he was transferred to the MBR Domino's store located at 2662 South Fifth Street, Springfield, IL 62703.

14

110.    Plaintiff's job duties included delivering pizzas and other food items to customers at their homes and workplaces, and completing various tasks inside the store.

111.    Plaintiff's tasks inside the MBR Domino's stores included tending the oven, taking orders, building pizza boxes, taking out trash, sweeping the food line, mopping, doing dishes, making pizzas, and completing other general tasks inside the restaurant.

112.    The MBR Domino's stores required Plaintiff to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering pizza.

113.    Plaintiff was required to purchase gasoline, oil and other fluids, vehicle parts, auto repair and maintenance parts and services, and auto insurance for the benefit of the MBR Defendants.

114.    Plaintiff's car depreciated in value as a result of the work he completed for the MBR Defendants.

115.    The MBR Defendants never attempted to track how much money Plaintiff was paying out of pocket in order to make deliveries on their behalf.

116.    The MBR Defendants never required Plaintiff to record or report the expenditures he made for his car, gasoline, and/or for other job-related expenses.

117.    The MBR Defendants did not reimburse Plaintiff at the IRS standard business mileage rate.

118.    The MBR Defendants did not reimburse Plaintiff for his actual expenses.

119.    The MBR Defendants did not reasonably approximate Plaintiff's expenses in determining how much to reimburse him.

120.    At all relevant times during his employment at MBR, Plaintiff was paid $8.25 per hour for all hours worked inside the store, and $4.95 per hour for hours worked outside the store.

15

121.     At all relevant times at MBR, Plaintiff received a flat delivery reimbursement amount of approximately $1.05 for each delivery he completed. This reimbursement rate was the same no matter how many miles he drove.

122.     Plaintiff delivered approximately 2-3 orders per hour at MBR.

123.     Plaintiff drove approximately 5 miles per delivery at MBR.

124.     Thus, MBR's average effective reimbursement rate for Plaintiff was approximately $.21 per mile ($1.05 per delivery / 5 average miles per delivery).

125.     In 2017, the IRS business mileage reimbursement has been $.535 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using that IRS rate as a reasonable approximation of Plaintiff's automobile expenses, every mile driven on the job decreased his net wages by approximately $.325 ($.535 - $.21) per mile. Considering Plaintiff's estimate of about 5 average miles per delivery, the MBR Defendants under-reimbursed him about $1.625 per delivery ($.325 x 5 average miles).

126.     Thus, Plaintiff consistently "kicked back" to the MBR Defendants approximately $4.06 per hour ($1.625 per delivery x 2.5 deliveries per hour).

127.     During Plaintiff's employment with the MBR Defendants, the MBR Defendants failed to adequately reimburse Plaintiff for automobile and other job-related expenses.

128.     As a result of unreimbursed automobile expenses and other job-related expenses, the MBR Defendants have failed to pay Plaintiff minimum wage as required by law.

## COLLECTIVE ACTION ALLEGATIONS

129.     Plaintiff brings the First Count on behalf of the following individuals:

16

All current and former delivery drivers employed at any MBR Domino's Pizza store nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action.

130.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked. Plaintiff's claims are essentially the same as those of the FLSA Collective.

131.    Defendants' unlawful conduct is pursuant to a corporate policy or practice of minimizing labor costs by failing to properly pay Plaintiff and the FLSA Collective.

132.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked.

133.    Defendants are aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers. *See* 29 C.F.R. § 531.35.

134.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

135.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

136.    The FLSA Collective members are readily identifiable and ascertainable.

137.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

**CLASS ACTION ALLEGATIONS**

17

138.    Plaintiff brings the Second, Third, and Fourth Counts under Federal Rule of Civil

Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed at the MBR Domino's Pizza
> stores in Illinois, during the ten years prior to the filing of this Class Action
> Complaint and the date of final judgment in this matter.

139.    Excluded from the Rule 23 Classes are Defendants' legal representatives, officers,

directors, assigns, and successors, or any individual who has, or who at any time during the class

period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned

and any member of the Judges' immediate family; and all persons who will submit timely and

otherwise proper requests for exclusion from the Rule 23 Classes.

140.    The number and identity of the Rule 23 Class members are ascertainable from

Defendants' records.  The hours assigned and worked, the positions held, and the rates of pay

and reimbursement for each Rule 23 Class Member are also determinable from Defendants'

records.  Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

141.    The Rule 23 Class members are so numerous that joinder of all members is

impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

142.    There are more than 50 Rule 23 Class members in the Rule 23 Class.

143.    Plaintiff's claims are typical of those claims which could be alleged by any Rule 23

Class member, and the relief sought is typical of the relief which would be sought by each Rule 23

Class member in separate actions.

144.    Plaintiff and the Rule 23 Class members were subject to the same corporate

practices of Defendants, as alleged herein, of failing to pay minimum wage, taking "kickbacks"

from wages, and failing to reimburse for expenses.

145.    Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with the IMWL and the IWPCA.

146.    Plaintiff and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

147.    Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

148.    By seeking to represent the interests of the Rule 23 Class members, Plaintiff is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

149.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

150.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

151.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum

simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

152.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

153.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

   a.   Whether Defendants paid Plaintiff and the Rule 23 Class members at the proper minimum wage rate for all hours worked;

   b.   Whether Plaintiff and the Rule 23 Class members were subject to a common reimbursement policy that resulted in wages to drop below legally allowable minimum wage and overtime;

   c.   Whether Plaintiff and the Rule 23 Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

   d.   Whether Plaintiff and the Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

   e.   Whether Defendants reimbursed Plaintiff and the Rule 23 Class for their actual expenses;

   f.   Whether Defendants maintained records of Plaintiff and the Rule 23 Class' actual expenses;

   g.   Whether Defendants reimbursed Plaintiff and the Rule 23 Class at the IRS standard business mileage rate for the miles they drove completing deliveries;

   h.   Whether Defendants reasonably approximated the automobile expenses, gasoline expenses, and other job-related expenses incurred by Plaintiff and the Rule 23 Class;

i.   Whether Defendants failed to pay Plaintiff and the Rule 23 Class in a timely manner as described by the IWPCA;

j.   Whether Defendants' policy of failing to pay Plaintiff and the Rule 23 Class was instituted willfully or with reckless disregard of the law; and

k.   The nature and extent of class-wide injury and the measure of damages for those injuries.

154.   In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

## CAUSES OF ACTION

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

155.   Plaintiff restates and realleges the foregoing allegations as if fully rewritten herein.

156.   Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

157.   Defendants impermissibly took a tip credit from the wages of Plaintiff and the FLSA Collective.

158.   Plaintiff and the FLSA Collective have been paid minimum wage or close to minimum wage for the hours they worked inside the store, and minimum wage minus a tip credit for the hours they worked on the road.

159.   MBR did not provide proper notice of the tip credit provisions of the FLSA, because they failed to pay the wage rate they promised to pay.

160.    Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, failed to reasonably calculate the value of said expenses, and failed to adequately reimburse Plaintiff and the FLSA Collective for said expenses.

161.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

162.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages – Illinois Minimum Wage Law**
**(On Behalf of Plaintiff and the Rule 23 Class)**

163.    Plaintiff restates and realleges the foregoing allegations as if fully rewritten herein.

164.    Defendants paid Plaintiff and the Rule 23 Classes below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses, by taking illegal "kickbacks" from their wages.

165.    Defendants paid Plaintiff and the Rule 23 Classes at minimum wage minus a tip credit for hours worked on the road completing deliveries.

166.    Because Defendants required Plaintiff and the Rule 23 Classes to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed pay Plaintiff and the Rule 23 Classes minimum wage.

167.    Because Defendants took deductions from the wages of the Plaintiff and the Rule 23 Classes for their benefit, Defendants failed to pay Plaintiff and the Rule 23 Classes minimum wage.

168.    By not paying Plaintiff and the Rule 23 Classes at least minimum wage for each hour worked, Defendants have violated the IMWL.

169.    As a result of Defendants' violations, Plaintiff and the Rule 23 Classes are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, unlawful deductions, statutory damages as defined by 820 ILCS 105/12(a), costs, and attorneys' fees.

**Count 3**
**Violation of the IWPCA – Unpaid Wages**
**(On Behalf of Plaintiff and the Rule 23 Class)**

170.    Plaintiff restates and realleges the foregoing allegations as if fully rewritten herein.

171.    This Count arises from Defendants' practice of failing to pay Plaintiff and the Rule 23 Class at the wage rate agreed to by the parties.

172.    During the course of his employment with MBR, Plaintiff had an agreement within the meaning of the IWPCA to be compensated for all hours worked at an agreed upon rate.

173.    Other similarly situated employees likewise had an agreement within the meaning of the IWPCA to be compensated for all hours worked at an agreed upon rate.

174.    Defendants had a practice of not paying Plaintiff and the Rule 23 Classes at the rate agreed to by the parties. For example, Defendants took "kickbacks" from the wages of Plaintiff and the Rule 23 Classes, and failed to properly reimburse Plaintiff and the Rule 23 Classes for the expenses they incurred while making deliveries on Defendants' behalf.

23

175. Plaintiff and the Rule 23 Classes were entitled to be paid for all time worked at the rate agreed to by the parties.

176. Defendants' practice of failing to pay Plaintiff and the Rule 23 Classes at the rate agreed to by the parties violated the IWPCA.

177. Plaintiff and the Rule 23 Class are entitled to recover all the unpaid wages in violation of the IWPCA made from their earned wages for a period of ten (10) years prior to the filing of this lawsuit. *See* 73 ILCS 5/13-206.

178. As a result of Defendants' violations of the IWPCA, Plaintiff and the Rule 23 Class, are entitled to unpaid wages, statutory damages provided under the IWPCA, reasonable attorneys' fees, and costs.

**Count 4**
**Violation of the IWPCA – Unlawful Deductions**
**(On Behalf of Plaintiff and the Rule 23 Class)**

179. Plaintiff restates and realleges the foregoing allegations as if fully rewritten herein.

180. This Count arises from Defendants' practice of making unlawful deductions from the wages of Plaintiff and the Rule 23 Class.

181. During the course of his employment with MBR, Plaintiff had an agreement within the meaning of the IWPCA to be compensated for all hours worked at an agreed upon rate.

182. Other similarly situated employees likewise had an agreement within the meaning of the IWPCA to be compensated for all hours worked at an agreed upon rate.

183. Defendants had a practice of making unlawful deductions from Plaintiff's earned wages without authorization from Plaintiff in writing as required by the IWPCA. Such deductions: (a) were not required by law; (b) were not to Plaintiff's benefit; (c) were not in

response to a valid wage assignment or wage deduction order; and (d) were not made with the express written consent of Plaintiff, given freely at the time the deductions were made.

184.    Defendants likewise had a practice of making unlawful deductions from members of the Rule 23 Classes without their authorization.

185.    Defendants' practice of making unlawful deductions from the earned wages of Plaintiff and the Rule 23 Classes violated the IWPCA.

186.    Plaintiff and the Rule 23 Classes are entitled to recover all the unlawful deductions made from their earned wages for a period of ten (10) years prior to the filing of this lawsuit. *See* 73 ILCS 5/13-206.

187.    As a result of Defendants' violations of the IWPCA, Plaintiff and the Rule 23 Class, are entitled to unpaid wages and unlawful deductions, statutory damages provided under the IWPCA, reasonable attorneys' fees, and costs.

**Count 5**
**Declaratory Judgment**
**(On Behalf of Plaintiff, the FLSA Collective, and the Rule 23 Class)**

188.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

189.    Upon information and belief, one or more MBR Domino's delivery drivers have signed arbitration agreements containing class action waivers.

190.    The arbitration agreements and class action waivers signed by MBR Domino's delivery drivers are invalid.

191.    The arbitration agreements and class action waivers signed by MBR Domino's delivery drivers are not valid contracts.

192.    The arbitration agreements and class action waivers signed by MBR Domino's delivery drivers violate the FLSA.

193.    The arbitration agreements and class action waivers signed by MBR Domino's delivery drivers violate the National Labor Relations Act.

194.    The arbitration agreements and class action waivers signed by MBR Domino's delivery drivers are unenforceable.

195.    Pursuant to 28 U.S.C. § 2201(a), this Court may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

196.    The arbitration agreements and class action waivers signed by MBR Domino's delivery drivers are unenforceable as a matter of law.

197.    Based on the foregoing, an actual and justiciable controversy exists between the parties. Plaintiff seeks a declaration that the arbitration agreements and class action waivers signed by MBR Domino's delivery drivers are invalid and unenforceable.

**WHEREFORE**, Plaintiff Dylan Donaldson prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.    Unpaid minimum wages, reimbursement of expenses, unlawful deductions and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.      Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel;

E.      A declaratory judgment that the practices complained of herein are unlawful under the IMWL and the IWPCA.

F.      A declaratory judgment that any arbitration agreement and/or class action waiver entered into by any MBR Domino's delivery driver is invalid and unenforceable.

G.      An award of unpaid minimum wages, unreimbursed expenses, and unlawful deductions due under the IMWL and IWPCA.

H.      Statutory damages under the IMWL.

I.      Statutory damages under the IWPCA.

J.      An award of prejudgment and post-judgment interest.

K.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

L.      Such other legal and equitable relief as the Court deems appropriate

Respectfully submitted,

/s/ Aaron Maduff
Aaron Maduff
Maduff & Maduff, LLC
205 N. Michigan Ave., Suite 2050
Chicago, IL 60601
(*abmaduff@madufflaw.com*)

Andrew Biller (Lead Counsel)
(*pro hac vice forthcoming*)

27

Andrew Kimble
(*pro hac vice forthcoming*)
Markovits, Stock & DeMarco, LLC
3825 Edwards Road, Suite 650
513-651-3700 (Phone)
513-665-0219 (Fax)
(*abiller@msdlegal.com*)
(*akimble@msdlegal.com*)
www.msdlegal.com

*Counsel for Plaintiff and the putative class*

## **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Aaron Maduff_____
Aaron Maduff